**STATE of Missouri ex rel. Everett BAKER, d/b/a Gateway Express, Appellant,**

v.

**PUBLIC SERVICE COMMISSION of Missouri, et al., Respondents.**

No. 25312.

Kansas City Court of Appeals, Missouri.

Oct. 4, 1971.

Louis W. Cowan, of Lilley & Cowan, Springfield, and Emory Melton, Cassville, for appellant.

Jeremiah D. Finnegan, General Counsel, and Errol D. Taylor, Asst. General Counsel, Jefferson City, for Public Service Commission.

Rebman, LaTourette & Gunn, by G. M. Rebman, St. Louis, for intervenor Robertson Motor Freight, Inc..

Herman W. Huber, Jefferson City, for intervenor Campbell Sixty-Six Express, Inc.

Crouch, Crouch, Spangler & Douglas, by Elvin S. Douglas, Jr., Harrisonville, for intervenor Greyhound Lines, Inc.

HOWARD, Judge.

This appeal involves the application of Everett Baker for intrastate irregular route authority as a common carrier of general commodities between eighteen named points in the counties of Jasper, Newton, McDonald and Barry, in southwest Missouri. In his application, Baker requested the Commission to create a classification of common carriers limited to the use of vehicles licensed for 12,000 pounds gross weight or less. After a full hearing on all aspects of the application, the Commission concluded that it was without authority to establish the classification requested and for that reason sustained the various motions to dismiss filed by other carriers who had intervened in the proceeding to protest the granting of the certificate. Baker appealed to the circuit court which affirmed the order of the Commission and he has duly appealed to this court.

Baker is an individual living on a farm near Stella in Newton County, Missouri. For a number of years he has been engaged in a one-man operation with one truck (he owns a second older truck for use when the regular truck is not operable) conducting what is commonly called a

"pony express" freight carrying business which is exempt from regulation by the Commission. Such exemption is limited to vehicles licensed for a gross weight of 6,000 pounds or less. With the truck owned by Baker this leaves a carrying capacity of approximately 1,300 pounds. Because of such limited carrying capacity, the business is becoming unprofitable. He, therefore, filed the present application to enable him to secure additional hauling capacity so as to increase his revenue to make it economically feasible to continue to perform the service he has performed in the past with his exempt vehicle.

In order to determine the authority of the Commission in this matter, we must examine the applicable statutes. Section 390.030 (all statutory references are to RSMo 1969, V.A.M.S. unless otherwise indicated), Subsection 8, exempts from regulation by the Public Service Commission freight-carrying motor vehicles licensed for a gross weight of 6,000 pounds or less. As stated, Baker's past operation has been under this exemption.

As to the classification requested in the application, Section 390.041, Subsection 3, authorizes the Commission "To establish just and reasonable classifications of types of carriers included in the terms 'common carriers' or 'contract carriers' as the *special nature of the services performed* by such carriers shall require * * *" (Emphasis added.) This subsection also authorizes the Commission to "establish such just and reasonable rules, regulations and requirements * * * to be observed by carriers so classified or grouped, as the commission deems necessary or desirable in the public interest."

Section 390.051 authorizes the Commission to grant a certificate of public convenience and necessity only if it finds from the evidence "that public convenience and necessity will be promoted, or that there is public need for the creation of *the service* proposed, or any part thereof * * *." (Emphasis added.)

Thus, it will be seen that the granting of a certificate must be based upon a consideration of the service to be rendered by the applicant and likewise the power of the Commission to establish classifications of carriers is limited to classifications based on "the special nature of the service performed * * *." The special nature of the service rendered may require the use of a special type of vehicle. This is specifically applicable to haulers of commodities in bulk, heavy haulers and other specialized carriers but the type of vehicle to be used, and more specifically the weight for which it may be licensed, does not define the service rendered by the ordinary common carrier.

In the case at bar the evidence was that with the particular vehicle used by Baker, he could haul a payload of 1,300 pounds on a 6,000 pound license. If the application were granted and he operated this same vehicle licensed for a gross weight of 12,000 pounds, he would be able to transport a payload of 7,300 pounds. However, he would not be limited to the vehicle he now operates. If he secured a new vehicle of a lighter weight, his payload could be increased; if he secured a vehicle of heavier weight, his payload would be decreased. Thus, by selecting the weight of his vehicle, he can change his capacity to render service without regard to the nature of the service rendered. The service would remain the same but the payload would fluctuate. With his present vehicle licensed for 12,000 pounds, he would be authorized to transport one item of freight weighing up to 7,300 pounds. With another vehicle he might have a capacity to carry one item weighing 6,000 pounds, 600 pounds or 60 pounds, all depending on the weight of the vehicle he selects, plus its fuel supply, driver, etc. With this low weight limitation of 12,000 pounds, the applicant could limit or expand his ability to serve the public in an artificial manner and at his sole discretion. This all would come to pass without regard to the nature of the service authorized to

be performed by the certificate as requested.

█ The evidence shows that in the past Baker's service has been devoted to the hauling of relatively light items of freight. They might be of odd shapes, such as automobile tail pipes, etc., but they were all of a light weight. The special advantage of his service was that he provided one day delivery in most instances. At the latest, he delivered the next morning and this applied only to a very few of the points served. Thus, the service he has been rendering was the hauling of light freight in an expedited service to the points listed, most of which were without such service by certificated carriers. If the present application were granted, he proposes to continue the same type of service. As heretofore pointed out, if the application were granted he would be authorized to haul one item of 7,300 pounds weight, assuming he uses the same vehicle. This does not correspond to the service he proposes to render but is within the authority he requested. We can, therefore, only conclude that the classification of a common carrier limited to operate a vehicle licensed for 12,000 pounds gross weight would not be a classification based upon "the special nature of the services performed" and the authority of the Commission to make classifications is limited to classifications based upon the nature of the service. Likewise, the limitation to the operation of vehicles licensed for a gross weight of 12,000 pounds or less has no relationship to the public convenience and necessity or the public need for the service proposed. It is an artificial limitation entirely disconnected from the service proposed.

In the past the Commission has declined to limit the services performed by a common carrier. Thus, in Re: Orscheln Bros. Truck Lines, Inc., 27 Mo.P.S.C. 677, decided in 1947, the Commission refused to permit a common carrier to limit its service to the transportation of truckload lots of freight only. The Commission stated: "If applicant were permitted to carry truck load lots only, it would cease to be a common carrier." The Commission pointed out that a common carrier should serve all alike; it operates for the convenience of the public generally, not for a select few. In the case of Re: Greenlee, 4 Mo.P.S.C. (NS) 148, decided in 1952, the Commission refused to authorize the operation of a "pony express" transportation service. The exact limitations proposed upon the requested certificate do not appear in the Commission's report and order. However, the Commission stated: "There is no provision in the law which would permit the Commission to issue a certificate of convenience and necessity for the transportation of general commodities which limits either the quantity of merchandise to be transported or the capacity of the vehicle to be used." The Commission went on to point out that the exemption of vehicles licensed for 6,000 pounds gross weight or less permitted the operation of "pony express" carrier without regulation by the Commission and that it did not believe it was authorized to permit such limited operation by a certificated carrier. This report and order, Re: Greenlee, has been cited with approval by the Commission in Re: Brown and Roberts, 4 Mo.P.S.C.(NS), 193, and Re: Asher, 4 Mo.P.S.C.(NS), 207. However, a careful examination of the Commission's report and order in these two cases shows that the decision in each case was based upon a finding that the evidence did not support the granting of the authority requested when proper consideration was given to the service provided by protesting carriers. In Asher, the certificate was granted in part. It was limited to that part of the requested route where no service was being performed by the protesting carriers or any other certificated carrier.

The Commission seems to have departed from the philosophy expressed in these cases that the services of a common carrier cannot be limited as to the quantity of

merchandise to be transported. Thus, in Re: Sloan's Moving & Storage Co., 9 Mo. P.S.C.(NS) 431, decided in 1961, the Commission granted a certificate of convenience and necessity covering 33 counties and the City of St. Louis, wherein the property to be transported was restricted to separate parcels not exceeding 50 pounds each and not exceeding 10 parcels from one consignor to one consignee on any one calendar day. A comparable authority was granted in Re: United Parcel Service, Inc., 12 Mo.P.S.C.(NS) 60, decided in 1965, authorizing common carriage of property over irregular routes between all points and places in Missouri limited to 50 pounds of weight for any one package or article and the size limited to 108 inches in length and girth. In the United Parcel case, the Commission pointed out that the term "common carrier" was subject to classification by the Commission and that the Commission would authorize specialized transportation service limited to small packages where the evidence showed that there was public need for such service. In both the Sloan's Moving & Storage Co. and the United Parcel cases, there were dissents based upon the Greenlee case, supra (4 Mo.P.S.C.(NS) 148). In each instance, the Commission refused to follow the Greenlee case and it would appear that the doctrine of that case has been abandoned by the Commission.

Thus, it appears that the Commission will now grant a certificate limited to expedited service of small freight where the evidence shows a public need therefor. However, such limitation was not requested by the applicant in the case at bar. Rather, he desires a special classification based upon the gross weight for which the vehicle is licensed, which leaves him unrestricted as to the service he can perform. This weight limitation would not, in point of fact, limit applicant to the transportation of light weight freight or to furnishing expedited service, the two prime characteristics of the service he has been performing and which he intends to continue.

If this 12,000 pound weight limitation were held to be a proper classification, there is no apparent reason why another carrier might not be entitled to a special classification for vehicles licensed for a gross weight of 18,000 pounds, and so on, until we have a separate classification for each weight bracket in the licensing statute. Section 301.057 provides 13 weight classifications for the licensing of property carrying commercial vehicles which range from 6,000 pounds and under for a fee of $20.50 to 72,000 pounds and over for a fee of $1,050.50. Vehicles licensed for 6,000 pounds are exempt from regulation as pointed out above. Thus, if the applicant's contentions were sustained, the result might be 12 different classifications of common carriers authorized to haul general commodities (anything and everything) who would, in fact, be performing the same service for the public. There is no rational connection between the nature of the service to be performed and the gross weight for which the operator chooses to license his vehicle. Any given vehicle, with only slight limitations because of its physical attributes, may be legally licensed for any one of a number of different weight categories, according to the weight of the load the operator intends to haul.

We therefore, conclude that the weight limitation on the authority requested by applicant has no reasonable or rational relationship to the service he seeks to perform. The authority of the Commission to classify carriers is limited to classification based on the nature of the service to be performed by the carrier. It, therefore, follows that the Commission was correct in determining that it was without authority to establish the requested classification and to issue a certificate limited by the gross weight for which the operator's vehicles were to be licensed.

The Commission did not determine whether or not applicant showed a public need for the service he desired to perform

and we specifically refrain from expressing any opinion on this subject.

The judgment of the trial court affirming the report and order of the Public Service Commission is therefore affirmed.

SHANGLER, P. J., and CROSS, J., concur.

ALVIN C. RANDALL, Special Judge, dissents.